UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 07-CV-5244 (JFB) (ETB)

———————————

INCORPORATED VILLAGE OF GARDEN CITY,

Plaintiff,

VERSUS

GENESCO, INC. AND GORDON-ATLANTIC CORP.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
September 23, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff, the Incorporated Village of Garden City ("plaintiff" or "the Village") brings the instant motion for reconsideration, pursuant to Local Civil Rule 6.3, of the Court's January 27, 2009 Memorandum and Order, granting in part and denying in part the separate motions to dismiss the complaint, filed by defendants Genesco, Inc. ("Genesco") and Gordon-Atlantic Corp. ("Gordon-Atlantic").[1] Specifically, plaintiff argues that the Court overlooked controlling authority and facts alleged in the complaint which establish that claims brought pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* ("RCRA"), as well as New York State common law, must go forward. For the reasons set forth below, the Court grants plaintiff's motion for reconsideration and, after reconsideration, denies defendants' motion to dismiss plaintiff's claims for injunctive relief brought under the RCRA and common law theories of public and private nuisance, trespass, and negligence. In reaching this decision, the Court has considered the alternative grounds for dismissal of these claims raised by defendants in their initial motion and finds them unpersuasive for the reasons discussed below.

---

[1] *See Inc. Vill. of Garden City v. Genesco*, 596 F. Supp. 2d 587 (E.D.N.Y. 2009), hereinafter, "*Genesco*" or "Memorandum and Order."

## I. BACKGROUND

### A. The January 27, 2009 Opinion

Plaintiff brought the underlying action against defendants on December 14, 2007, asserting federal claims under the RCRA, the Safe Drinking Water Act, 42 U.S.C. §§ 300f *et seq.* ("SDWA"), and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), as well as state common law claims of private nuisance, public nuisance, trespass, negligence, indemnification, and negligence *per se*. Specifically, plaintiff alleged that defendants bear responsibility for toxins released into the Village's water supply at 150 Fulton Avenue in Garden City Park, New York ("the Site") over a period of years. Defendants separately moved for dismissal of the complaint for failure to state a claim. By Memorandum and Order dated January 27, 2009, the Court determined that: 1) plaintiff's RCRA claim was barred by the statutory provision that prohibits such citizen suits upon the "initiation [and diligent prosecution] of a Remedial Investigation and Feasibility Study ["RI/FS"] under Section 104 of [CERCLA, 42 U.S.C. § 9604]," *see* 42 U.S.C. §§ 6972(b)(2)(B)(iii), (C)(iii); 2) plaintiff's SDWA claim failed as a matter of law against Genesco because the regulations upon which the claim is based did not exist at the time of the alleged release of the contaminants and have no retroactive effect; 3) plaintiff's SDWA claim failed as a matter of law against Gordon-Atlantic because the facts, as pled, demonstrated that Gordon-Atlantic neither maintained any injection activity nor abandoned the well at the Site; 4) factual disputes related to plaintiff's CERCLA claim and the governing statute of limitations precluded dismissal at that stage in the proceedings; 5) plaintiff's state law claims of public and private nuisance, trespass, negligence and negligence *per se* seeking monetary and equitable relief were untimely under C.P.L.R. § 214-c(2); 6) plaintiff's claim for negligence *per se* also failed as a matter of law because it relied upon an administrative regulation; and 7) plaintiff's claim for indemnification insofar as it sought damages for costs incurred prior to November 27, 2000 and December 14, 2001, as against Genesco and Gordon-Atlantic, respectively, was time-barred. *See Genesco*, 596 F. Supp. 2d 587, 592-610. Familiarity with the facts as pled and the legal analysis contained in the underlying decision is presumed.

Plaintiff now moves for reconsideration of that decision, arguing that the facts as pled demonstrate that its RCRA claim must go forward in the absence of a cooperative agreement between state and federal agencies initiating the RI/FS. Plaintiff further asserts that controlling case law restricts the application of C.P.L.R. § 214-c(2) to actions seeking only damages and, therefore, plaintiff's state law claims must be reinstated insofar as they seek injunctive relief. Defendants oppose plaintiff's motion, and urge the Court, if it does reconsider its prior ruling, to dismiss plaintiff's RCRA claim pursuant to alternative grounds originally argued in their separate motions to dismiss. As set forth below, the Court grants plaintiff's motion in its entirety and denies defendants' respective motions to dismiss plaintiff's RCRA claim and its state law claims of public and private nuisance, trespass and negligence to the extent that all seek equitable relief.

### B. Procedural History

On February 6, 2009, plaintiff moved for reconsideration of the Court's January 27, 2009 Memorandum and Order. Defendants

2

separately opposed plaintiff's motion on February 23, 2009.[2] Plaintiff filed its reply on March 2, 2009. Oral argument was heard on September 16, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

Under Local Civil Rule 6.3, reconsideration is appropriate only if "'the court overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court.'" *United States v. U.S. Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty-Three Dollars*, No. 95 Civ. 3982 (JG), 1999 WL 84122, at *2 (E.D.N.Y. Feb. 11, 1999) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, No. 86 Civ. 6447 (JMC), 1989 WL 162315, at *4 (S.D.N.Y. Aug. 4, 1989) (internal quotation marks omitted)); *see Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, No. 97 Civ. 6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."); *Davis v. The Gap*, 186 F.R.D. 322, 324 (S.D.N.Y. 1999) (stating that "the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment"). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court, *U.S. Currency*, 1999 WL 84122, at *2 (citing *Cohen v. Koenig*, 932 F. Supp. 505, 506 (S.D.N.Y. 1996)), and "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation and citation omitted).

## III. DISCUSSION

### A. The RCRA Claim

In the instant matter, plaintiff first submits that the Court overlooked controlling federal regulations which establish that the letters exchanged between the State of New York and the Administrator of the Environmental Protection Agency ("EPA") regarding Genesco's clean-up efforts on the Site do not constitute a "cooperative agreement" under Section 104 of CERCLA as a matter of law.[3] Plaintiff further argues that even if the Court did not err in its initial determination regarding those letters, its RCRA claim should still be reinstated because the facts, as alleged in the complaint, do not give rise to

---

[2] Defendant Gordon-Atlantic did not file a brief in opposition, but rather submitted a letter indicating that it adopted the arguments raised by defendant Genesco in its memorandum of law. (*See* Docket Entry No. 45.)

[3] As a threshold matter, it is unclear to the Court why plaintiff in both its opposition brief to defendants' initial motion, as well as at oral argument when specifically questioned on this issue, failed to previously identify the regulations they now argue control the outcome of this claim. However, in the interests of justice, the Court will consider plaintiff's argument regarding the regulations in the instant motion for reconsideration.

3

the conclusion that New York State was "diligently proceeding with a remedial action," as defined by RCRA § 7002. As set forth below, the Court agrees that the cited federal regulations control and there was no cooperative agreement between New York State and the Administrator as a matter of law, thereby negating the bar to plaintiff's citizen suit implemented by Section 6972(b)(2)(B). However, the inquiry does not end there, as RCRA injunctive relief is barred as to the scope and duration of an Administrative Order on consent, if one has been so issued pursuant to Section 106 of CERCLA. As pled, the complaint clearly establishes that such an Administrative Order is currently in place. However, because the specific scope and duration of that Administrative Order cannot be clearly discerned from the Order, or the face of the complaint and materials incorporated therein, dismissal of the RCRA claim is inappropriate at this stage in the litigation and is best addressed at the summary judgment stage, once discovery has been conducted, if the parties wish to make such a motion. Accordingly, defendants' motion to dismiss plaintiff's RCRA claim is denied.

1. Subsections 6972(b)(2)(B)(iii) and (C)(iii)

The RCRA bars a citizen suit if the Administrator or the State "has incurred costs to initiate a Remedial Investigation and Feasibility Study under Section 104 of [CERCLA, 42 U.S.C. § 9604] and is diligently proceeding with a remedial action under that Act." 42 U.S.C. §§ 6972(b)(2)(B)(iii), (C)(iii). Section 104 of CERCLA states that "the President may enter into a contract or cooperative agreement with the State or political subdivision or Indian tribe" who wish to "carry out actions authorized in this section," such as the removal of a hazardous substance. *See* 42 U.S.C. §§ 9604(a)(1), (d)(1). The Court, in its prior opinion, determined that letters exchanged between the New York State Department of Environmental Conservation ("DEC") and the EPA constituted such a "cooperative agreement," barring recovery under the RCRA. *See Genesco*, 596 F. Supp. 2d at 596-97.

Plaintiff now argues, for the first time, that federal regulations specifically define what documents constitute "cooperative agreements" under Section 104 of CERCLA and that the letters in the instant case do not meet those strictures. Specifically, they direct the Court's attention to 40 C.F.R. § 35.6015(a), which defines a "Cooperative Agreement," for purposes of Section 104 of CERCLA, as "[a] legal instrument EPA uses to transfer money, property, services, or anything of value to a recipient to accomplish a public purpose in which substantial EPA involvement is anticipated during the performance of the project." *Id.*; *see also* 40 C.F.R. § 35.600 ("Authority: This subpart is issued under section 104(a) through (j) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA) (42 U.S.C. 9601 et seq.).").[4] Here, the letter sent from the EPA to

---

[4] Genesco argues that these regulations only apply "to situations in which a state is overseeing a *federally financed* remedial action," whereas here, Genesco is funding the action. (*See* Genesco's Opposition, at 7.) This argument proves too much, for if the State is not engaged in a federally financed remediation, *i.e.,* it has no intention of claiming federal funds for its work, then the regulations may not control, but neither does the bar on plaintiff's citizen suit, because then, the State is not proceeding under Section 104 of

4

the DEC simply states: "we concur with your proposal." It is clear, from the plain language of this correspondence, that the EPA is not using it to transfer "money, property, services, or anything of value" to the State, as a matter of law. Accordingly, this exchange of letters between state and federal agencies does not constitute a "cooperative agreement" and, therefore, this requirement for the Section 6972(b)(2)(B)(iii) and/or (C)(iii) bar to a RCRA citizen suit is not met.[5]

---

CERCLA. *See generally* 42 U.S.C. § 9604; *see also United States v. Sensient Colors, Inc.*, 580 F. Supp. 2d 369, 375 (D.N.J. 2008) ("EPA response actions conducted pursuant to § 104 of CERCLA are initially financed with federal Superfund monies.") (footnote omitted); *United States v. United Nuclear Corp.*, 814 F. Supp. 1552, 1555 (D.N.M. 1992) ("Section 104(a) [of CERCLA] authorizes the federal government to take necessary cleanup actions financed by the Superfund to respond to such releases or threatened releases. Alternatively, under § 104(d), the federal government may enter into cooperative agreements with states, political subdivisions or Indian Tribes to conduct cleanup actions using the Superfund.") (citations omitted) (quoting *State of Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1488-89 (10th Cir. 1990)); *City of Philadelphia v. Stepan Chem. Co.*, 713 F. Supp. 1484, 1494 (E.D. Pa. 1989); ("Section 104(d)(1) of CERCLA authorizes the federal government to enter into contracts or cooperative agreements with a state or political subdivision to take Superfund-financed response action when the federal government determines that the state or subdivision has the capability to undertake such actions.") (footnote omitted). Equally unavailing is Genesco's reference to 40 C.F.R. § 300.515(a)(3), which states that "[c]ooperative agreements . . . are only appropriate for non-Fund financed response actions if a state intends to seek credit for remedial action expense under § 300.510," for again, if Genesco is the only party bearing the costs of the action, then the RCRA bar is inapplicable.

[5] Defendants argue, in the alternative, that, even if there is no "cooperative agreement" under Section 104 of CERCLA, the RCRA claim is barred under Section 6972(b)(2)(B)(iii) on the independent ground that the EPA has incurred costs to initiate an RI/FS and is diligently proceeding with remediation under the Act. However, the Court concludes that this issue also cannot be decided in this case at the motion to dismiss stage. As a threshold matter, the complaint alleges that the DEC, not the EPA, initiated the RI/FS under Section 104 of CERCLA. (Compl. ¶ 33.) Moreover, the complaint alleges that neither the defendants nor the government is diligently proceeding with remedial action. Although this issue can be decided at the motion to dismiss stage in certain cases, given the allegations in the complaint in this instant case, the Court cannot conclude at this juncture as a matter of law that the suit is barred under this subsection. *See, e.g., Organic Chems. Site PRP Group v. Total Petroleum, Inc.*, 6 F. Supp.2d 660, 665 (W.D. Mich. 1998) ("the Court finds that plaintiff has asserted facts from which the Court could infer a lack of diligence on the part of the government" and "at this early stage of the litigation, dismissal of plaintiff's claim would be inappropriate"); *accord Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir. 1988); *City of Bangor v. Citizens Commc'ns Co.*, No. Civ. 02-183-B-S, 2004 WL 1572612, at *6 (D. Me. Jul. 6, 2004); *Fallowfield Dev. Corp. v. Strunk*, Civ. A. No. 89-8644, 1990 WL 52745, at *14 (E.D. Pa. Apr. 23, 1990); *Lee v. Charles-Thomas, Inc.*, Civ. A. No. H-84-4798, 1987 WL 5670, at *1 (S.D. Tex. Jan. 12, 1987). Of course, after appropriate discovery on this issue, defendants can move for summary judgment if they believe the evidence supports application of this bar to the lawsuit.

### 2. Subsection 6972(b)(2)(B)(iv)

The Court's inquiry does not end here, though, because defendants argue, in the alternative, that plaintiff's claim under the RCRA is barred by subsection 6972(b)(2)(B)(iv) of that statute, which states that:

> No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment – has obtained a court order (including a consent decree) or issued an administrative order under section 106 of [CERCLA] or section 6973 of this title pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

42 U.S.C. § 6972(b)(2)(B)(iv). In the instant case, the EPA issued a Unilateral Administrative Order for a Removal Action ("UAO") requiring Genesco to perform investigative sampling.[6] (*See* Docket Entry No. 25, Ex. 4, hereinafter "UAO.") The agency then issued a Record of Decision ("ROD"), which selected an interim remedy for the tetrachloroethylene ("PCE") contamination at part of the contaminated Site designated as Operable Unit 1. (Complaint ("Compl.") ¶ 67.) The interim remedy involves the partial remediation of the groundwater utilizing a groundwater extraction and treatment system in conjunction with the application of a chemical oxidation in the vicinity of the original PCE source area, as well as an evaluation of the well-head treatment system installed by the Village at the supply wells. (Compl. ¶ 68.) Defendants argue that the UAO was brought pursuant to Section 106 of CERCLA,[7] and thus bars plaintiff's citizen suit. Plaintiff does not contest that the UAO was issued pursuant to Section 106, but argues that its RCRA

---

[6] Specifically, the Administrator ordered Genesco, pursuant to Section 106 of CERCLA, to "commence implementation of the following response action: Investigatory sampling and analysis which shall consist of sampling of monitoring wells . . . and analyzing all groundwater samples collected from these monitoring wells for Target Compound List[,] volatile organic compounds using USEPA Method 8260B." (*See* UAO, at 8.)

[7] Section 106 of CERCLA states that:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . after notice to the affected State, . . . issu[e] such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. § 6906

claim was commenced in November 2006, *prior* to the institution of the EPA's order in August 2007 and, therefore, is not barred.[8] *See, e.g., A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*, 968 F. Supp. 423, 432 (E.D. Wisc. 1997) (court determined that RCRA claim commenced prior to the issuance of Administrative Order under CERCLA 106 was not barred, stating that "section 6972(b)(2)(B)(iv) prohibits the 'commencement' of a citizen suit once section 106 orders are issued . . . [but] not . . . the 'maintenance' of such a suit"); *Acme Printing Ink Co. v. Menard, Inc.*, 881 F. Supp. 1237, 1247 (E.D. Wisc. 1995) (same). However, the EPA issued the UAO in August 2007. Plaintiff commenced this action by filing its complaint before the undersigned on December 14, 2007. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Subsection 6972(b)(2)(B)(iv) states that "[n]o action may be commenced" after the issuance of such an order. Although plaintiff argues that, under the terms of its tolling agreement with Genesco, the complaint was to be deemed filed in November 2006, such an argument is unavailing, as that agreement clearly states that it applies "for purposes of calculating any applicable statutes of limitations." (Compl. ¶ 66.) There is no statute of limitations at issue here.

Furthermore, permitting plaintiff to "backdate" the commencement of its lawsuit in this manner would undermine the entire purpose behind the RCRA statutory scheme. The RCRA contains a notice provision which requires potential litigants to inform both the EPA and the State of their intent to file suit ninety days prior to doing so. *See* 42 U.S.C. § 6972(b)(2)(A). This notice provision provides the impacted agencies with the opportunity to address the situation, either by filing suit or issuing an administrative order, before a private civil action proceeds. If the agencies then choose to so act, certain subsections of the RCRA prevent a district court from ordering relief already directed by an environmental agency. The purpose of this statutory scheme is clear; it is intended to prevent district courts and environmental agencies from acting at cross-purposes. *See River Village West LLC v. Peoples Gas Light and Coke Co.*, 618 F. Supp. 2d 847, 853 (N.D. Ill. 2008) ("In allowing for citizen suits under RCRA, Congress intended for these suits to be utilized only when the government failed to exercise its power under RCRA. RCRA citizen suits are then meant to serve as a contingency, not a hindrance to government action."); *R.E. Goodson Constr. Co. v. Int'l Paper Co.*, No. 4:02 Civ. 4184, 2005 U.S. Dist. LEXIS 42909, at *87 (D.S.C. Oct. 13, 2005) ("To ensure that citizen suits are not duplicative or disruptive of federal or state remediation efforts, [RCRA] § 7002(b)(2) bars citizen suits in certain instances where the US or a State has acted to address the alleged endangerment."); *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 67 F. Supp. 2d 302, 307 (S.D.N.Y. 1999) ("[C]itizen suits are only intended to allow private attorneys general to fill the gaps in public enforcement endeavors, and are oftentimes conditioned upon the failure of federal and state officials to exercise their own enforcement

---

[8] Plaintiff filed the instant lawsuit on December 14, 2007. (*See* Docket Entry No. 1.) However, plaintiff and defendant Genesco executed a tolling agreement, the terms of which provided that the lawsuit would be deemed filed on November 27, 2006. (*See* Compl. ¶ 66.) (Genesco did not dispute this date for purposes of its motion to dismiss, but maintains that the suit should be deemed filed on December 2, 2006).

responsibilities.") (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987)); *Coalition for Health Concern v. LWD, Inc.*, 834 F. Supp. 953, 957 (W.D. Ky. 1993) ("The express purpose of a citizen suit under § 6972(a)(1)(B) is to remedy an imminent and substantial endangerment to health or the environment. Accordingly, § 6972(b)(2)-(B) precludes such suits where the EPA has already acted to remedy an imminent and substantial endangerment.") *rev'd on other grounds*, 60 F.3d 1188 (6th Cir. 1995); *McGregor v. Industrial Excess Landfill, Inc.*, 709 F. Supp. 1401, 1408 (N.D. Ohio 1987) ("Congress intended to provide the private right of action under RCRA only when the EPA or the state fail[s] to act to remedy the hazardous situation."). If courts permitted litigants to simply "backdate" (through tolling agreements) the commencement of a suit to a time prior to the notice date, as plaintiff attempts to do here, it would completely circumvent both the notice provision as well as the statutory bars triggered by agency action, for a private right of action could then go forward in the face of existing agency action concerned with the same subject matter. This overlap is precisely the situation Congress sought to avoid in drafting the citizen suit bars. Accordingly, the Court finds that the date designated in the tolling agreement between plaintiff and Genesco is not the date that the RCRA suit was commenced for purposes of that claim. The suit was commenced on December 14, 2007, the date that the complaint was filed before this Court, approximately four months after the EPA issued a UAO for the Site, pursuant to Section 106 of CERCLA. Therefore, the statutory bar is operative.

However, this bar is limited as follows: "[i]n the case of an administrative order referred to in clause (iv), actions under subsection (a)(1)(B) of this section are prohibited only as to the scope and duration of the administrative order referred to in clause (iv)." 42 U.S.C. § 6972(b)(2)(B). To that end, courts have often permitted a RCRA citizen suit to go forward in the presence of an administrative order to the extent that the scope and duration of the former do not overlap with that of the latter. *See Acme Printing Ink Co.*, 881 F. Supp. at 1245 ("[T]he 'scope and duration' clause manifests Congress's desire to permit citizen suits to be brought to remedy imminent and substantial dangers which are not being addressed by existing section 106 orders. It is the scope of the abatement action that is relevant . . . ."); *see, e.g.*, *Organic Chem. Site PRP Group v. Total Petroleum Inc.*, 58 F. Supp. 2d 755, 764-65 (W.D. Mich. 1999) ("The only UAO issued by the EPA for the Site and the only remediation that has been conducted address groundwater contamination exclusively. Therefore, the PRP Group's RCRA claim, which addresses both groundwater and soil contamination, is not barred."); *A-C Reorganization Trust*, 968 F. Supp. at 431 (citizen suit not barred if administrative order only addressed arsenic in lake and plaintiffs sought remediation of contaminants beyond arsenic in lake and groundwater); *Coburn v. Sun Chem. Corp.*, CIV. A. No. 88-0120, 1988 WL 120739, at *12 (E.D. Pa. Nov. 9, 1988) (citizen suit not barred where administrative order addressed underground contamination and plaintiffs sought surface remediation); *Fishel v. Westinghouse Elec. Corp.*, 617 F. Supp. 1531, 1539 (M.D. Pa. 1985) (citizen suit not barred where administrative order addressed surface wastes and plaintiffs sought subsurface contamination and drinking water remediation).

In the instant matter, plaintiff argues that its claim is only preempted as to the "scope and duration" of the UAO. Specifically, plaintiff notes that, while its RCRA claim "seeks a permanent remedy by which Defendants will obtain hydraulic control of the contaminant plume and remediate the PCE-contaminated groundwater in the Aquifer from which its Supply Wells draw water," the UAO requires no remedial action, but only "a discrete set of sampling activities (namely, the collection and analysis of groundwater samples from four existing monitoring wells), within a limited period of time." (*See* Docket Entry No. 26, at 11.)[9] The parties thus dispute the extent to which the UAO and plaintiff's requested relief coincide, and that overlap is far from apparent from the UAO, or the face of the complaint or the materials relied upon therein. The Court cannot appropriately determine, at this early stage in the proceedings, without the benefit of factual discovery, whether plaintiff's claim is barred by the UAO and, if not, to what extent plaintiff's claim may go forward. This determination is best addressed at the summary judgment stage, or at trial, if necessary. *See Goe Engineering Co., Inc. v. Physicians Formula Cosmetics, Inc.*, No. CV 94-3576-WDK, 1997 WL 889278, at *10 (C.D. Cal. June 4, 1997) ("Since there is a factual dispute regarding compliance with the 106 Order and the scope of that order as it applies to the regional groundwater problem, the Court reserves for trial the issue of whether P & S are precluded from proceeding against Goe under the citizen suit provisions of RCRA with regard to all or some aspects of the regional groundwater problem."); *see also Organic Chem. Site PRP Group*, 58 F. Supp. 2d at 764-65 (defining scope and duration of Order in relationship to requested RCRA relief on summary judgment); *A-C Reorganization Trust*, 968 F. Supp. at 431 ("The better course is to allow the RCRA claim to stand for now. If defendants can ultimately show that the EPA-supervised removal or remediation would adequately address the alleged groundwater contamination, then the RCRA claim might be dismissed. If, however, the procedures do not contemplate removal or remediation of any actual groundwater contamination, Plaintiffs should be able to proceed with their claim and seek injunctive relief to achieve a clean-up of the groundwater contamination."). Therefore, plaintiff's RCRA survives defendants' motion to dismiss pending a determination of how plaintiff's requested relief intersects with the scope and duration of the UAO already in place.[10]

---

[9] The ROD, issued after the UAO, describes the selected remedy for the Site as follows: "The Selected Remedy is an interim remedy that involves the partial remediation of the groundwater utilizing a groundwater extraction and treatment system in conjunction with a focused application of in-situ chemical oxidation in the vicinity of an original source area." (*See* Docket Entry No. 25, Ex. 5, hereinafter "ROD.")

[10] By letter dated September 11, 2009, defendant Genesco advised the Court that a complaint and a proposed consent judgment were filed on September 10, 2009 between the United States and Genesco regarding the Fulton Avenue site. By letter dated September 14, 2009, Genesco also advised the Court that it was served with a unilateral Administrative Order by the EPA on August 18, 2009. These recent developments do not impact the Court's decision that, under the circumstances of this case, the RCRA injunctive relief claim should not be dismissed at the motion to dismiss stage under Section 6972(b)(2)(B)(iv) based solely upon the pleadings because some discovery and additional submissions from the parties is necessary in order for the Court to properly determine whether the UAO falls within

Finally, although defendants argue that denying the motion to dismiss and allowing some limited discovery on these issues will undermine the RCRA bars to a citizen suit and potentially interfere with the actions being taken by the EPA, the Court disagrees. The Court fully recognizes that the bars to citizen suits in RCRA are designed to prevent private litigants from interfering with administrative enforcement actions that are already underway. Thus, "[t]he purpose of RCRA § 7002 is to complement and not conflict or compete with the US and states' roles in investigating hazardous waste sites." *R.E. Goodson Constr. Co.*, No. 4:02 Civ. 4184, 2005 U.S. Dist. LEXIS, 42909, at *88 (D.S.C. Oct. 13, 2005). However, the Court also has an obligation to ensure that the explicit requirements of the subsections that potentially bar such suit have been met. When the resolution of that issue cannot be determined based on the pleadings (and other documents that can be considered on a motion to dismiss), appropriate discovery on such issues must take place and allowing such discovery, before deciding the applicability of the citizen suit bar, will not interfere with, or hinder, any ongoing work of administrative agencies. Magistrate Judge Boyle, after hearing from the parties, will determine the appropriate scope and timing of such discovery.

## B. State Law Claims

Plaintiff next argues that reconsideration of the Court's Memorandum and Order dismissing its state law claims of public and private nuisance, trespass, and negligence is warranted because the applicable statute of limitations does not bar those claims insofar as they seek injunctive relief. For reasons set forth *infra*, the Court agrees, and denies defendants' motion to dismiss the aforementioned claims for injunctive relief only.

Under N.Y. C.P.L.R. § 214-c(2), claims brought under the common law theories of public and private nuisance, trespass, and negligence are time-barred if filed more than three years after the "date of discovery of the injury by the plaintiff or . . . the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." *Id.* The New York Court of Appeals has determined that this discovery rule applies only to actions for damages, *see Jensen v. Gen. Elec. Co.*, 623 N.E.2d 547, 553-54 (N.Y. 1993), and the Second Circuit has adopted this ruling. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("[T]he timeliness of a claim for injunctive relief is not governed by [C.P.L.R. § 214-c(2)], and an injunctive remedy may be available to halt a continuing nuisance or trespass even when the recovery of money damages is barred by the statute of limitations.") (internal citations omitted).

In the January 2009 Memorandum and Order, this Court dismissed plaintiff's state law claims seeking damages because plaintiff either knew or should have known about

---

the scope and duration of the administrative order. However, this recent administrative activity, along with evidence obtained during discovery on this issue, may shed additional light on this issue if it is again raised by defendants at the summary judgment stage. Moreover, as discussed at oral argument, if the consent judgment is signed by the Court, there may be additional motion practice regarding the RCRA claim, including the issue of mootness. However, those issues will be addressed at the appropriate time if a motion is made by one of the parties.

defendants' alleged wrongdoing by 1998 at the absolute latest, rendering its claims untimely. *See Genesco*, 596 F. Supp. 2d at 607. The Court also dismissed plaintiff's claims for injunctive relief based upon the conclusion that damages constituted the gravamen of plaintiffs' complaint and the requested injunctive relief was incidental thereto. *See Genesco*, 596 F. Supp. 2d at 606. In doing so, the Court relied upon recent decisions in New York State courts suggesting that the application of C.P.L.R. § 214-c(2) was contingent upon the "gravamen" of the relief sought. *See Thoma v. Town of Schodack*, 6 A.D.3d 957, 959 (N.Y. App. Div. 2004) (statute of limitations applicable to claims for damages despite plaintiff's argument that they were "incidental" to desired injunctive relief); *Russo v. Keyspan Corp.*, No. 15757/2007, 2008 N.Y. Slip Op. 50121U, at *3 (N.Y. Sup. Ct. Jan. 22, 2008) (applying C.P.L.R. § 214-c and dismissing civil action seeking damages and injunctive relief based upon alleged exposure to contaminants from underground plumes); *see also Palmieri v. Village of Babylon*, 809 N.Y.S.2d 566, 567 (N.Y. App. Div. 2006) (citing *Thoma* and holding that "[s]ince the claims for damages set forth in the amended complaint were more than merely incidental to the equitable relief sought in the original complaint, the plaintiff was required to file a timely notice of claim pursuant to General Municipal Law § 50-e"). However, the *Thoma* court specifically stated that though it needed to determine whether plaintiff's principal objective was equitable or monetary relief in order to determine whether his claims for damages survived the statutory bar, the court's "resolution w[ould] 'not affect or purport to affect the availability of injunctive equitable relief.'" 6 A.D.3d at 958 (citing *Jensen*, 623 N.E.2d 547). The Court erred in its application of that decision to the case at bar. In other words, although damage claims that are incidental to injunctive relief may not be barred by the limitations of Section 214c(2), that issue has no impact at all on the injunctive relief, which is simply not governed at all by Section 214c(2) even when coupled with claims for monetary damages. Therefore, in light of both the New York State Court of Appeals and the Second Circuit's unequivocal rulings that the C.P.L.R. § 214-c(2) statutory bar is not applicable to claims which seek equitable relief, as well as the language in *Thoma*, the fact that plaintiff's multi-million dollar claims for damages are not incidental to its requested injunctive relief is of no consequence. Plaintiff's state law claims of public and private nuisance, trespass, and negligence may go forward insofar as they seek equitable relief. Thus, the motion to dismiss the claim for injunctive relief as time-barred under Section 214-c(2) is denied.

C. Primary Jurisdiction

Because the Court dismissed plaintiff's claims for injunctive relief brought pursuant to both federal statutory and state common law in its January 2009 Opinion, it had no need to address defendants' argument, raised in their separate motions, that this action should be stayed and/or dismissed under the doctrine of primary jurisdiction. Having determined that these claims survive the motion to dismiss, the Court must now consider this issue. As set forth below, the Court concludes that the primary jurisdiction doctrine does not warrant a stay or dismissal of the claims for injunctive relief at this juncture.

The "primary jurisdiction" doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under

11

a regulatory scheme, have been placed within the special competence of an administrative body." *Fulton Cogeneration Ass'n v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). "The aim of the doctrine . . . is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." *Id.* (citing *Gen. Elec. Co. v. M.V. Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987)); *see also Crystal Clear Commc'ns, Inc. v. SW Bell Tel. Co.*, 415 F.3d 1171, 1174 n.2 (10th Cir. 2005) ("In essence, the [primary jurisdiction] doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results.") (quoting *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996)). In determining whether this doctrine warrants a stay of proceedings, the Second Circuit has identified four factors as the "focus of the analysis":

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. and Tel. Co.*, 46 F.3d 220, 222 (2d Cir. 1995). The Second Circuit has also noted that courts "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 (2d Cir. 2006) (quoting *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 223 (2d Cir. 1995) (internal quotations omitted)). *But see Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 68 n.2 (2d Cir. 2002) (noting that "the Supreme Court has never identified judicial economy as a relevant factor").

In the instant case, defendants argue that the four factors outlined above all weigh in favor of a stay and/or dismissal. Specifically, they submit that: (1) "investigating, remediating and overseeing regional groundwater contamination" does not fall within the conventional expertise of judges but rather involves highly technical considerations best understood by the EPA and the DEC; (2) the issue of what remedy will best address the situation with the groundwater is well within the respective agencies' discretion; (3) any ruling by this Court would necessarily create a danger of inconsistent rulings, particularly in light of the fact that the EPA has already issued a UAO and a ROD regarding the Site; and (4) plaintiff has made no prior application to the agencies implicated by this action. (*See* Docket Entry No. 24, at 21-24.) Plaintiff, in turn, argues that any issues presented by overlapping agency and court involvement in an environmental remediation are adequately addressed by the preconditions for filing suit established by the RCRA and that a stay

and/or dismissal would constitute an "end run" around that statute. Plaintiff further notes that it provided both the EPA and the DEC with a notice of its claim sixty days prior to filing suit and neither agency has undertaken "adequate enforcement action" in response. (*See* Docket Entry No. 26, at 24.)

The Court is well aware that Congress, through the RCRA, conferred jurisdiction upon the federal courts to address the very environmental issues raised by plaintiff's citizen suit and created bars to such suits in the face of specific agency action. Many courts considering abstention and/or dismissal under similar circumstances have determined that where Congress has acted to confer jurisdiction, courts should not act to undo it. *See, e.g.*, *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) ("[Abstention] would be an end run around RCRA. Congress has specified the conditions under which the pendency of other proceedings bars suit under RCRA . . . ."); *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 2d 728, 734 (N.D. Ill. 2003) ("[A]bstention under the primary jurisdiction doctrine is not warranted here. RCRA is a federal statute with explicitly federal jurisdiction. To follow this theory 'would be an end run around RCRA.'") (quoting *PMC*, 151 F.3d at 619) (internal citation omitted); *College Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1328-29 (N.D. Ga. 2002) ("RCRA explicitly empowers citizens to enforce its provisions and precludes citizen suits in certain instances of state or federal action. The statutory scheme thus contemplates citizen suits as a supplement to state government action, and the court could not, in good faith, unilaterally strip United States citizens of rights given them by their government.") (internal citation omitted); *DMJ Assocs., L.L.C. v. Capasso*, 228 F. Supp. 2d 223, 229-30 (E.D.N.Y. 2002) ("By authorizing citizens to file private lawsuits under RCRA and narrowly defining the conditions under which state or federal action can circumscribe that right, Congress clearly signaled that the federal courts have a duty to hear and decide these claims and carefully limited the deference courts should pay to the expertise of an administrative agency."); *Williams v. Ala. Dep't of Transp.*, 119 F. Supp. 2d 1249, 1256 (M.D. Ala. 2000) ("Primary jurisdiction is particularly inappropriate in situations involving a statute like RCRA, which expressly allow[s] for citizens to bring suit in order to ensure uniform enforcement of federal environmental laws."); *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998) ("Other courts have held, and this Court agrees, that questions posed by RCRA . . . are not so esoteric or complex as to foreclose their consideration by the judiciary."); *Cal. Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 807 n.21 (E.D. Cal. 1995) ("This doctrine [of primary jurisdiction] has no application here because Congress has expressly set forth the ground rules for citizen suits [under the Clean Water Act] and only bars penalty actions in specified circumstances."). Thus, this Court's decision to divest itself of jurisdiction is not one to be taken lightly and, in fact, is unwarranted at this point in time. As stated *supra*, without the benefit of factual discovery, it is yet unclear to the Court whether Section 6972(b)(4)(B) of the RCRA bars plaintiff's claim for injunctive relief. The extent to which relief already ordered by the EPA overlaps with relief sought by plaintiff in the instant lawsuit is critical to any primary jurisdiction analysis, as it directly impacts the possibility of inconsistent rulings from the EPA and the Court. Accordingly, defendants' motion for a stay and/or dismissal of this

13

action pending future agency action under the doctrine of primary jurisdiction is denied. Defendants may ask the Court to revisit this issue after the close of discovery if they so desire, but are cautioned that the reasoning adopted by the aforementioned courts declining to stay a RCRA claim is persuasive. Defendants will thus need to demonstrate at that time why the bars implemented by the RCRA statutory scheme do not provide sufficient safeguards against the problems the doctrine of primary jurisdiction is intended to address.

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration of the Court's January 27, 2009 Memorandum and Order is granted. Specifically, defendants' motions to dismiss plaintiff's claim for injunctive relief brought pursuant to the RCRA are denied, as are defendants' motions to dismiss plaintiff's state common law claims of public and private nuisance, trespass, and negligence insofar as they seek equitable relief. The parties shall continue with discovery under the direction of Magistrate Judge E. Thomas Boyle.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2009
       Central Islip, New York

Attorney for plaintiff is Daniel Riesel, Esq., Sive, Paget & Riesel, P.C., 460 Park Avenue, New York, NY, 10022. Attorneys for defendant Genesco, Inc. are Delight D. Balducci, Esq. And James J. Periconi, Esq., Periconi, LLC, 708 Third Avenue, 17th Floor, New York, NY, 10017, and Melissa Ballengee Alexander, Esq. and Paul A. Alexis, Esq., Boult, Cummings, Conners & Berry P.L.C., 1600 Division Street, Suite 700, P.O. Box 340025, Nashville, TN, 37203. Attorneys for defendant Gordon-Atlantic Corp. are Christopher Joseph McKenzie, Esq., Michael G. Murphy, Esq., and Stephanie Marie Haggerty, Esq., Beveridge & Diamond, P.C., 477 Madison Avenue, 15th Floor, New York, NY, 10022.